O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE D.M. DOE, a minor, by and through her Guardian ad Litem, Ivette Rodriguez,<br><br>　　　　Plaintiff,<br><br>　v.<br><br><br>COUNTY OF LOS ANGELES, and DOES 1 through 10, inclusive,<br><br>　　　　Defendants. | Case No.  20-cv-3218 DDP (JPRx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>[Dkt. 31] |

   Presently before the court is County of Los Angeles' Motion to Dismiss First Amended Complaint for Damages.  (Dkt. 31, Mot.)  Having considered the submissions of the parties and heard oral argument, the court grants the motion and adopts the following Order.

**I. BACKGROUND**

   Plaintiff JANE D.M. DOE ("Plaintiff") "was born on April 11, 2008 and is a minor residing in the County of Los Angeles, California."  (Dkt. 30, First Amend. Compl.

("FAC") ¶ 5.) "Plaintiff is the natural born daughter of [Alfredo Montalvo ("Decedent")] . . . [as] confirmed by DNA testing." (*Id.*) Defendant County of Los Angeles ("County") "is, and was, a duly organized public entity existing under the laws of the State of California." (*Id.* ¶ 7.) Defendants DOES 1-10, "were duly appointed County of Los Angeles Sheriff's Deputies and were employees or agents of County . . . ." (*Id.* ¶ 8.)

Plaintiff alleges that "[o]n or about April 26, 2009, at or near the intersection of Santa Fe and Norton Avenues in the city of Lynwood, California, Defendants DOES 1-10 shot [Decedent] sixty-one (61) times and [Decedent] was unarmed at the time he was shot and killed by DOES 1-10." (*Id.* ¶ 39.) Plaintiff also alleges that "[o]n November 6, 2009, three of Decedent's family members filed a complaint against the County in [ ] Superior Court for the County of Los Angeles, Case No. TC023708, [("Montalvo Action")] for the alleged violation of civil rights, negligence, negligent hiring, training and supervision, battery, intentional infliction of emotional distress and wrongful death." (*Id.* ¶ 15.) The Montalvo Action did not include Plaintiff. (*Id.*) In the Montalvo Action, "[o]n November 20, 2012, a twelve-person jury returned a verdict awarding . . . $8.5 million in damages after finding that the County was negligent in the shooting of Decedent . . . ." (*Id.* ¶ 16.) Plaintiff asserts that her claims "remain without adjudication and, in the furtherance of the interests of justice the instant Complaint seeks a judicial remedy for [Plaintiff's] claims . . . ." arising from the County's wrongful shooting of Decedent. (*Id.*)

On April 7, 2020, Plaintiff commenced this action against Defendant asserting federal and state law claims on behalf of herself and on behalf of Decedent. (Dkt. 1, Compl.) On October 20, 2020, the court granted the County's Motion to Dismiss and granted Plaintiff leave to amend to sufficiently allege the wrongful death claims and to sufficiently allege standing. (Dkt. 28, Order Granting Defendant's Motion to Dismiss Complaint.) The County presently moves to dismiss the First Amended Complaint under Rule 12(b)(6). (Mot.)

///

2

## II. LEGAL STANDARD

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." *Id*. at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. *Id*. at 678 (citations and internal quotation marks omitted).

## III. DISCUSSION

### A. Section 1983 Claims

The County moves to dismiss Plaintiff's Section 1983 claims arguing that the claims are "premised on alleged excessive force [that] cannot be brought as wrongful death claims." (Mot. at 6:17-19.) According to the County, the claims are survival claims that the court has previously dismissed with prejudice. Plaintiff does not dispute that she cannot pursue survival claims in this action. (Dkt. 32, Opp.) Plaintiff also does not dispute that she cannot pursue excessive force claims as wrongful death claims. (*Id.* at 12-13.) Plaintiff instead asserts that the Section 1983 claims are "substantive due process claims based on her loss of her father's companionship." (*Id.*) Defendant does not appear to dispute that such a claim is proper. (Dkt. 33, Reply ("To the extent such a claim could proceed, plaintiff's Opposition makes clear that her claim is only for substantive due process loss of association under the Fourteenth Amendment."); *see also* FAC ¶ 5

3

"Plaintiff does not assert survival claims.")  The court agrees that Plaintiff's claims may proceed as substantive due process loss of association claims.

### B. Article III Standing

The County next argues that Plaintiff has insufficiently pled standing under the standards set forth by the Supreme Court in *Lehr v. Robertson*, 463 U.S. 248 (1983) and more recently, the Ninth Circuit in *Wheeler v. City of Santa Clara*, 894 F.3d 1046 (9th Cir. 2018).  According to the County, the First Amended Complaint does not sufficiently establish that Decedent "actually spent time with plaintiff," that Decedent "participated in any parental activities," or generally "maintained consistent contact" with Plaintiff. (Mot. at 10-12.)

"A decedent's parents and children generally have the right to assert substantive due process claims under the Fourteenth Amendment."  *Wheeler*, 894 F.3d at 1057. "[C]hildren's Fourteenth Amendment rights to companionship with their parents have been interpreted as reciprocal to their parents' rights."  *Id.* at 1058.  The Supreme Court has made clear that "the mere existence of a biological link does not merit [ ] constitutional protection."  *Lehr*, 463 U.S. at 261.  Instead, "[j]udicially enforceable Fourteenth Amendment interests require enduring relationships reflecting an assumption of parental responsibility and 'stem[ ] from the emotional attachments that derive from the intimacy of daily association, and from the role it plays in promoting a way of life through the instruction of children.'"  *Wheeler*, 894 F.3d at 1058 (quoting *Lehr*, 463 U.S. at 256-61)).  Therefore, "even biological parents must maintain consistent involvement in a child's life and participation in child-rearing activities for their relationship to be entitled to the Fourteenth Amendment protections . . . ."  *Id.*

As currently pled, the allegations fall short of establishing that Decedent maintained consistent involvement in Plaintiff's life and participated in child-rearing before his death.  At the time of Decedent's death, Plaintiff was a year and two weeks old.  (FAC ¶ 26.)  Plaintiff alleges that "Decedent wanted Plaintiff [ ] to be a huge part of

4

[his] life," and that "Decedent embraced Plaintiff with a lot of love." (*Id.* ¶¶ 23-24.) However, these new allegations are vague as to Decedent's specific actions that demonstrate that Decedent "embraced Plaintiff with a lot of love." Further, Plaintiff's allegations are vague as to Decedent's contact with Plaintiff. Plaintiff has not alleged any contact between Decedent and Plaintiff, such as visits, phone calls, or any other form of contact. The allegation that Decedent's *family* attended Plaintiff's first birthday, does not state that Decedent himself attended. (*Id.* ¶ 25.) Specific allegations of Decedent's conduct toward Plaintiff during his life are necessary to plausibly allege consistent involvement in Plaintiff's life. These deficiencies can be cured by amendment, however.

The court dismisses the complaint with leave to amend. In any amendment, Plaintiff must provide sufficient factual allegations that demonstrate Decedent's consistent involvement with Plaintiff and establishing that Decedent participated in child-rearing.

### C.  California's One-Action Rule

The County also argues that Plaintiff's wrongful death claims are barred by California's One-Action Rule and that Plaintiff has not sufficiently alleged the County's knowledge of her existence at the time of the Montalvo settlement. (Mot. at 12-16.) The California Supreme Court has articulated the One-Action Rule as follows:

> In stating that an action for wrongful death is joint, it is meant that all heirs should join or be joined in the action and that a single verdict should be rendered for all recoverable damages; when it is said that the action is single, it is meant that only one action for wrongful death may be brought whether, in fact, it is instituted by all or only one of the heirs, or by the personal representative of the decedent as statutory trustee for the heirs; and when it is said that the action is indivisible, it is meant that there cannot be a series of suits by heirs against the tortfeasor for their individual damages.

5

*Cross v. Pac. Gas & Elec. Co.*, 60 Cal. 2d 690, 694 (1964).  The One-Action rule will bar subsequent wrongful death claims by omitted heirs.  *See Smith v. Premier Reliance Insurance Co.*, 41 Cal. App. 4th 691 (1995).  However, a defendant may waive the right to single action where the defendant had knowledge of the omitted heir and did not seek to join that heir in the action or settlement.  *Id.*; *see also Gonzales v. S. California Edison Co.*, 77 Cal. App. 4th 485, 489 (1999) (where a "defendant settles an action that has been brought by one or more of the heirs, with knowledge that there exist other heirs who are not parties to the action, the defendant may not set up that settlement as a bar to an action by the omitted heirs.").

The court previously granted Plaintiff leave to amend to sufficiently plead waiver of the One-Action Rule.  (*See* Dkt. 28.)  In the First Amended Complaint, Plaintiff alleges that in a February 20, 2013 letter, County counsel in the Montalvo Action was informed that Plaintiff was an heir of Decedent's and that she had "legal representation and intended to file a lawsuit."  (FAC ¶ 31.)  Although the allegations do not clearly state who drafted the alleged letter, the allegations plausibly demonstrate that the County's counsel had knowledge of Plaintiff's existence prior to the Montalvo Settlement and did not seek to join Plaintiff in the Montalvo Action or Settlement.  Nothing more is required at the pleading stage.  The County argues alternatively that the County's notice of Plaintiff's existence prior to the settlement, "expired due to [P]laintiff's failure to make any other attempt to join the Montalvo Action." (Reply at 5:14-5.)  The County has not cited any authority, nor has the court found any authority, for the proposition that a defendant's notice of an omitted heir can "expire."  Thus, the court concludes that Plaintiff has sufficiently pled the County's waiver of the One-Action Rule.

///
///
///
///

## IV. CONCLUSION

For the reasons set forth above, the court grants the County's Motion to Dismiss the First Amended Complaint. The court grants Plaintiff leave to amend to sufficiently plead Article III standing. Any amendment must be filed within 20 days from the date of this order.

**IT IS SO ORDERED.**

Dated: December 30, 2020

_____

DEAN D. PREGERSON

UNITED STATES DISTRICT JUDGE

7